## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Osahenrumwen Ojo

    v.                                  Civil No. 11-cv-210-JL

Hillsborough County Department
of Corrections, et al.[1]

## REPORT AND RECOMMENDATION

Before the court is Osahenrumwen Ojo's complaint (doc. nos. 1, 7 and 10),[2] filed pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his rights during his incarceration at the Hillsborough County Department of Corrections ("HCDC"). The matter is before the court for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United

---

[1]In addition to the Hillsborough County Department of Corrections ("HCDC"), plaintiff names the following defendants to this action: HCDC Superintendent James O'Mara, HCDC Nurse Liz Descar, HCDC Officers Medic, first name unknown ("FNU"), FNU Goulding, FNU Feindal, FNU Gutierres, FNU Muise, FNU Rodriguez, and Sgt. FNU Gordon.

[2]Ojo filed an initial complaint (doc. no. 1) and an addendum thereto (doc. no. 7). Ojo then filed a "Motion for Effectuation and Encapsulation" (doc. no. 10), which the court also construes as an addendum to the complaint. Accordingly, the court will consider the complaint to be comprised of these three filings (doc. nos. 1, 7 and 10) for all purposes.

States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed.

R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at

555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Discussion[3]

I.   Excessive Force

Ojo alleges that, on February 25, 2011, inmate Brad Harrington went into Ojo's cell and began a physical altercation with Ojo.  Ojo states that although he is a strong fighter and

---

[3]The claims as identified in this report and recommendation shall be considered to be the claims raised by Ojo in his complaint (doc. nos. 1, 7 and 10) for all purposes.  If Ojo objects to this identification of his claims, he must do so by properly objecting to this report and recommendation or properly moving to amend his complaint.

was therefore able to defend himself during the fight, "a chunk of [Ojo's] neck was tore (sic) off."

HCDC Officers Medic and Goulding responded to the fight and ordered Ojo to lie face down on the ground. Ojo complied. Ojo states that while Medic and Goulding were handcuffing Ojo behind his back, they assaulted him. Ojo states that Medic put all of his weight on Ojo's back while Goulding repeatedly twisted Ojo's left wrist as if he were trying to break it. Ojo states that because he couldn't breathe he screamed continuously while he was being handcuffed and assaulted in his cell. Medic and Goulding stood Ojo up and escorted him to "the hole." Ojo alleges that on the way there, both officers repeatedly slammed Ojo's head into a door.

Shortly after being transferred to "the hole," Ojo saw a nurse. Ojo states that he apprised the nurse, in the presence of HCDC Sgt. Brooks, of the injury Harrington caused to his neck as well as the pain in his wrist and head resulting from the assault by Medic and Goulding. Both the nurse and Sgt. Brooks opined that Ojo's injuries would heal themselves. Ojo states that he continues to have headaches as a result of the officers slamming his head against the door.

The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham

v. Connor, 490 U.S. 386, 395 n.10 (1989); see also Surprenant v.
Rivas, 424 F.3d 5, 15 (1st Cir. 2005).  That right is at least
as protective as the Eighth Amendment's guarantee that convicted
prisoners not be subjected to excessive force.  See Burrell v.
Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002).

The applicable Eighth Amendment standard is "whether force
was applied in a good-faith effort to maintain or restore
discipline, or maliciously and sadistically to cause harm."
Hudson v. McMillian, 503 U.S. 1, 7 (1992).  In asserting an
excessive force claim, a prisoner need not allege that he has
sustained a serious or significant injury in order to obtain
relief.  See Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct.
1175, 1178 (2010).  The relevant factors for the court to
consider in evaluating an excessive force claim are: the need
for force; the relationship between that need and the amount of
force applied; the extent of any injury inflicted; the "threat
'reasonably perceived by the responsible officials;'" and the
"'efforts made to temper the severity of a forceful response.'"
McMillian, 503 U.S. at 7.

Here, Ojo has alleged that no force was needed during his
handcuffing and transport to "the hole," as he was complying
with all of the officers' orders.  Even if Ojo was compliant
during the handcuffing, and the force employed by Medic and

Goulding was more than what was actually necessary to subdue him, however, the court notes that, when they entered Ojo's cell, the officers were responding to a violent fight that had resulted in at least one injury. Ojo states that he is an able fighter and got the best of Harrington during the altercation. Ojo's descriptions of the actions of Medic and Goulding's in leaning on him to subdue and handcuff him seem a reasonable response to an inmate immediately after the inmate was involved in a violent altercation. The court also notes that, while Ojo alleges he was physically compliant with the officers, he continued to scream loudly while he was being handcuffed. An officer in such a situation may reasonably have perceived the situation, and Ojo, as volatile and potentially dangerous. Therefore, all of the facts alleged in the complaint fail to state a plausible claim that the officers were acting sadistically to cause harm, rather than to restore order during the time they were in Ojo's cell. Accordingly, the excessive force claims against Medic and Goulding for their actions while handcuffing Ojo in his cell should be dismissed.

Ojo has also asserted that he was subjected to excessive force during his transfer to the hole, while he was being compliant with the officers. Ojo states that at that time, Medic and Goulding gratuitously slammed his head into a door

repeatedly, causing him to experience lasting headaches.  Ojo

has alleged that sufficient force to cause lasting harm was used

against him in a gratuitous manner, in a situation where no

force was necessary.  Nothing in the complaint suggests that

banging Ojo's head on the door was in any way intended to, or

was necessary to, restore order.  Ojo has therefore stated

sufficient facts to support excessive force claims against Medic

and Goulding for repeatedly slamming Ojo's head into a door.  In

an order issued simultaneously with this report and

recommendation, the court has directed service of the complaint

on Medic and Goulding.

II.  <u>Legal Mail</u>

    Ojo alleges that on several occasions, HCDC officers opened

his legal mail outside of his presence.  On January 12, 2011,

and January 17, 2011, Ojo states that HCDC Officer Muise

delivered Ojo's legal mail to him in envelopes that had already

been opened.  On March 5, 2011, HCDC Officer Rodriguez delivered

legal mail to Ojo that was not in an envelope.  When Ojo asked

the officers, on each occasion, why his legal mail had been

opened, the officers stated either that the mail had been

received by the HCDC without an envelope, or that the mail had

been received by the officer from the mailroom in an opened

envelope.  Ojo's assertions imply that it violates HCDC
regulations to open legal mail outside the presence of the
inmate for whom it is intended.  On February 10, 2011, Ojo filed
a grievance complaining that his legal mail was being opened and
read by HCDC staff.  Ojo does not name any individual who he
alleges actually opened or read his legal mail.

A.   Prison Regulations

An inmate has no constitutional right to have jail
officials follow jail policies if the officials' actions are
otherwise constitutional.  See Querido v. Wall, No. CA 10-098
ML, 2010 WL 558915, *3 (D.R.I. Dec. 8, 2010), adopted, 2011 WL
63503 (D.R.I. Jan. 7, 2011).  For the reasons explained below,
the court finds that the officers' actions did not violate any
of Ojo's constitutional rights.  Thus, to the extent Ojo states
that his rights were violated by the failure of HCDC officials
to follow their own mail procedures, such a claim is not
cognizable under section 1983 and should be dismissed.

B.   First Amendment

"Inmates retain their First Amendment right to both send
and receive mail, although that right is subject to regulation."
Hudson v. O'Brien, No. 09-10276-RWZ, 2010 WL 2900529, *2 (D.
Mass. July 21, 2010); Thornburgh v. Abbott, 490 U.S. 401, 413

9

(1989)).  Courts have afforded greater protection to incoming legal mail than to incoming non-legal mail, because such mail may impact "'prisoner's legal rights, the attorney-client privilege, or the right of access to the courts.'"  Donovan v. Magnusson, No. Civ. 04-102-B-W, 2005 WL 757585, *10 n.17 (D. Me. Mar. 11, 2005) (citing Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir. 1996) and Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)).

"Negligent interference with legal mail is not actionable under section 1983."  Murphy v. Grenier, 406 F. App'x 972, 976 (6th Cir. 2011), cert. denied, ___ U.S. ___, 132 S. Ct. 202 (2011) (citing Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997)); see also Conway v. Jackson, No. 5:10CV00225 JLH-BD, 2010 WL 3547226, *2 (E.D. Ark. Aug. 16, 2010) (isolated incident of jail official opening inmate's legal mail outside of inmate's presence does not give rise to liability "without evidence of improper motive" or injury resulting), adopted, 2010 WL 3547225 (E.D. Ark. Sept. 17, 2010).  An inmate must demonstrate that prison officials "regularly and unjustifiably interfered with his legal mail."  Davis, 320 F.3d at 351-52 (two incidents of mail interference insufficient to state First Amendment violation where inmate "alleges neither the establishment of an

ongoing practice by prison officials of interfering with his mail nor any harm suffered by him from the tampering").

Ojo alleges that on three occasions HCDC officials opened his legal mail outside of his presence.  Except for the fact that two of the incidents occurred five days apart, Ojo asserts nothing to suggest that there was an established or ongoing practice by jail officials to interfere with his legal mail. Further, Ojo has alleged no harm arising from the improper opening of his mail.  Accordingly, Ojo has failed to state a violation of his First Amendment right to receive legal mail, and the claim should be dismissed.

C.   Sixth Amendment

Ojo's Sixth Amendment right to counsel and right to access the courts are also potentially implicated where his legal mail has been opened outside of his presence.  See Donovan, 2005 WL 757585 at *2; O'Brien, 2010 WL 2900529 at *2.  The Sixth Amendment does not prevent prison officials from inspecting legal mail to the extent necessary to preserve institutional security, but it does require that the officials do so while "preserving the inmates' expectation of attorney-client confidentiality, such as by opening attorney communications in the presence of the inmate so that the inmate can be sure the

inspection does not include reading the communication."
O'Brien, 2010 WL 2900529 at *2 (citing Wolff v. McDonnell, 418
U.S. 539, 577 (1974)).

With respect to the right to counsel potentially implicated
by the opening of legal mail, courts have held that isolated
instances of the opening of confidential legal mail without
evidence of an improper motive or injury will not give rise to a
constitutional violation.  See O'Brien, 2010 WL 2900529, at *3
(citing Gardner, 109 F.3d at 430-31, and Smith v. Maschner, 899
F.2d 940, 944 (10th Cir. 1990)).  Ojo's complaint fails to show
any injury or improper motive and therefore fails to state a
plausible claim for relief on that ground.

To state a claim for relief alleging a denial of access to
the courts, an inmate must demonstrate more than the mere
possibility that his right to access the court might be
impacted; he must show that the challenged act actually
"hindered his efforts to pursue a legal claim."  Lewis v. Casey,
518 U.S. 343, 351 (1996); see also Boivin v. Black, 225 F.3d 36,
43 n.5 (1st Cir. 2000) ("a prisoner must show actual injury in
order to demonstrate a violation of the right of access to the
courts").  Ojo has not stated that any legal claim or action was
in any way hindered or frustrated by the opening of his legal
mail on the three occasions described.  Accordingly, Ojo has

failed to state a violation of his right to counsel or of his right to access the courts, and the claims relating to the opening of his legal mail should be dismissed.

III. <u>Back Pain Treatment</u>

On October 11, 2010, and December 10, 2010, Ojo asked HCDC Nurse Liz Descar for pain medication (Motrin) to treat pain in his upper back and neck.  On both occasions, Descar refused to give Ojo medication.[4]  On October 11, 2010, she advised him instead to run hot water on his neck and back.  After his December 10, 2011, request for medication was denied, Ojo filed a grievance with HCDC Sgt. Gordon complaining of Descar's refusal to give him medication.  Ojo did not receive a response to that grievance.

On February 5, 2011, Ojo asked a nurse named Lora for Motrin to treat upper back and shoulder pain he had been experiencing for a few days.  Lora gave Ojo the medication he requested.  Later that day, a nurse named Christen brought Ojo

_____

[4]Ojo states in his complaint that by refusing to give him medicine, Descar "continue[d] to maltreat me, because she refuse (sic) to give me medication for almost 2 ½ months, in the past, and while I was in serious pain."  It is unclear whether Ojo is referring to Descar's October 11, 2010, refusal to give him a single dose of medication, or whether he is referring to another denial of medication by Descar which is otherwise not described here.  The court's recommendation in this matter is not impacted by which interpretation of Ojo's statement is correct, and therefore the court need not resolve the question at this time.

instructions for exercises he could do to alleviate his pain, but refused to provide him with medication.

On February 10, 2011, Ojo advised Nurse Descar that the exercises he was given were not alleviating his pain, and that he was having a hard time "recumbenting daytime, and at bedtime as well."  Ojo again requested pain medication and Descar again refused.  The exercises did not resolve Ojo's back pain.

On March 1, 2011, Ojo states he went to the HCDC medical department with acute chest pains, and complained as well about back and neck pain.  At that time, Ojo saw a doctor who prescribed Motrin for one month.

Ojo states that on March 3, 2011, he was not given his evening dose of Motrin because he was sleeping when the nurse came by, and she did not wake him up to take his medication. Also, he states that on March 5, 2011, the nurse arrived at his unit to give inmates their medications, but did not have Ojo's medication.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993); Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir. 1999).  The Eighth Amendment protects convicted prison inmates from prison officials acting with deliberate indifference to

their serious medical needs.  See Farmer v. Brennan, 511 U.S.
825, 831 (1994).  A pretrial detainee's right to
constitutionally adequate medical care arises under the
Fourteenth Amendment's Due Process Clause.  See Surprenant, 424
F.3d at 18 (liberty interests at stake in Fourteenth Amendment
claim of detainee "are coextensive with those of the Eighth
Amendment's prohibition against cruel and unusual punishment").
The Due Process Clause provides at least as much protection to a
detainee in need of medical care as the Eighth Amendment
provides to a sentenced prisoner.  See id.  Ojo's complaint does
not state whether, at the time of the events that form the basis
for his claims, he was a sentenced inmate or a pretrial
detainee.  The court notes, however, that the result of this
preliminary review is unaffected by Ojo's status during the
relevant timeframe.

    The Eighth Amendment shields convicted inmates from
officials acting with deliberate indifference to their serious
medical needs.  See Farmer, 511 U.S. at 831.  The Supreme Court
has adopted a two-part test for reviewing medical care claims
under the Eighth Amendment.  See id. at 834.  A court must first
determine if the prisoner has alleged facts sufficient to show
that he or she has not been provided with adequate care for a
"serious medical need[]."  Id. at 835. Second, the court must

determine if the complaint contains sufficient allegations to show that defendants acted with deliberate indifference in failing to provide adequate care to address that serious need. See id. at 834.

To be found deliberately indifferent, a prison official must be both subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also actually draw the inference. See id. at 837. Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (citation omitted).

"In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (internal citation and quotations omitted). Deliberate indifference may be found "in wanton decisions to deny or delay care, where the action is reckless, not in the tort law sense but in the appreciably stricter criminal-law sense." Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (internal citation and quotations omitted). Allegations that simply show "substandard care, malpractice,

negligence, inadvertent failure to provide care, and
disagreement as to the appropriate course of treatment are all
insufficient to prove a constitutional violation." Ruiz-Rosa,
485 F.3d at 156.  Further, "'[w]here the dispute concerns not
the absence of help, but the choice of a certain course of
treatment,' deliberate indifference may be found [only if] the
attention received is 'so clearly inadequate as to amount to a
refusal to provide essential care.'" Leavitt v. Cor. Med.
Servs., Inc., 645 F.3d 484, 503 (1st Cir. 2011) (quoting Torraco
v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991)) (other citations
omitted); see also Ferranti v. Moran, 618 F.2d 888, 891 (1st
Cir. 1980) ("disagreement on the appropriate course of treatment
. . . falls short of alleging a constitutional violation").

Ojo claims that on three days, between October 2010 and
March 2011, he experienced pain in his upper back and neck and
asked for Motrin on those occasions.  Ojo has provided no facts
to the court indicating that his pain arose out of a serious
condition requiring medical treatment or was otherwise
sufficiently serious to constitute a "serious medical need."
Further, Ojo was not denied treatment.  On the first occasion
that he complained, a nurse spoke to him and advised him to try
hot water to alleviate his pain.  On the second occasion he
complained, he was given one dose of medication as well as

exercises for his pain.  When the exercises proved ineffective, Ojo was seen by a doctor at the HCDC who prescribed pain medication for him.  On the two occasions after Ojo saw the doctor on which he was not provided medication, there is nothing in the complaint to suggest that the failure to give Ojo two doses of ibuprofen evidenced any intention to inflict pain upon Ojo, or to otherwise cause him harm.

Ojo's complaint boils down to his disagreement with the initial treatment he was given for his back pain.  The facts alleged do not support his assertion that he was denied adequate treatment for a serious medical need, or that he was treated with deliberate indifference to any medical need.  The court therefore finds that Ojo has failed to state sufficient facts to support a claim for inadequate medical care, and the claim should be dismissed.

IV.  Denial of Toilet Paper

On February 2, 2011, pursuant to HCDC policy, Ojo showed HCDC Officer Feindal his empty toilet paper roll and requested a replacement roll of toilet paper.  Feindal denied Ojo toilet paper, stating that he still had some tissue on the roll.  Ojo states that there was no toilet paper left on his roll.  Within minutes of that encounter, Feindal gave Ojo's cellmate and a

number of other inmates toilet paper when they showed her their
empty toilet paper rolls.  Ojo states that Feindal denied him
toilet paper because she hates him.

To prove that a condition of his confinement, such as a
denial of toilet paper, violated the constitution, Ojo "must
show, inter alia, 'that from an objective standpoint, [the
challenged condition] den[ied] him the minimal measure of
necessities required for civilized living." See Beltran v.
O'Mara, 405 F. Supp. 2d 140, 161 (D.N.H. 2005), reconsideration
denied, No. 04-CV-071-JD, 2006 WL 240558 (D.N.H. Jan. 31, 2006)
(quoting Surprenant, 424 F.3d at 18).  The court cannot find, on
the facts alleged in the complaint, that a single denial of a
roll of toilet paper, even if the denial was punitive, was a
sufficient deprivation of the "minimal measure" of the
necessities of civilized life to violate the constitution.  See
Beltran, 405 F. Supp. 2d at 161 (delay of one hour in receiving
toilet paper, absent any evidence of frequency of the delays,
did not constitute constitutional violation); Harris v. Fleming,
839 F.2d 1232, 1235 (7th Cir. 1988) (denial of toilet paper for
five days was not a deprivation of constitutional proportion).
Ojo has not alleged that the deprivation of toilet paper was of
long duration, that it was ever repeated, or that he suffered
any harm, or even any indignity, as a result of the denial.

Accordingly, Ojo's claim based on the denial of a roll of toilet paper fails to state any claim for relief and should be dismissed.

V.    Grievance Procedures and Retaliation

On February 7, 2011, Ojo asked Sgt. Gordon for a grievance form so that he could file a grievance against Feindal for denying him toilet paper on February 2, 2011.  Gordon, accompanied by Officer Gutierres, went to see Ojo to question him about the toilet paper incident.  Ojo alleges that both Gordon and Gutierres then proceeded to yell at Ojo.  Gordon threatened to write Ojo up on a disciplinary charge for abusing the grievance process if he followed through with the toilet paper grievance.  Ojo states that Gordon did not allow Ojo to file a grievance regarding the incident.  In his complaint, Ojo lists at least five occasions, including the February 7 incident with Gordon and Gutierres, on which he was not provided with a grievance form that he requested, or did not receive answers to grievances he had filed.

A.    Grievance Procedures

Construing the complaint liberally, the court finds that Ojo alleges that he has suffered a deprivation of his First Amendment right to petition the government for a redress of

grievances.  There is no general constitutional right to prison grievance procedures.  Freeman v. Dep't of Corrs., No. 11-1972, 2011 WL 4625712, *1 (3d Cir. Oct. 6, 2011).  Thus, "the defendants' alleged obstruction or misapplication of [grievance] procedures is not independently actionable."  Id.  Accordingly, Ojo's claim alleging a denial of access to grievance procedures and the failure to respond to grievances should be dismissed.

   B.   Retaliation

   The First Amendment shields prisoners from retaliation in response to their engaging in speech or other conduct protected by the First Amendment.  See Ortiz v. Jordan, ___ U.S. ___, ___, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)).  In order to state a claim for retaliation for the exercise of a First Amendment right, a prisoner must allege: (1) that the conduct which led to the alleged retaliation was protected by the First Amendment; (2) that he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

   Plaintiff's First Amendment right to petition the government for a redress of grievances includes his right to

access a prison's grievance procedures.  See Hightower v. Vose,
95 F.3d 1146, *1 (1st Cir. 1996) (unpublished table decision).
Ojo has satisfied the first element of a retaliation claim, as
he has alleged that he was retaliated against for filing or
stating his intent to file a grievance that he had a First
Amendment right to file.

To satisfy the second element of a retaliation claim, Ojo
must show that defendants took adverse action against him.  De
minimis reactions to protected speech will not satisfy that
requirement.  See Morris v. Powell, 449 F.3d 682, 685-86 (5th
Cir. 2006).  A defendant's reaction to protected speech is not
de minimis, however, if defendant's conduct would deter an
individual of ordinary firmness from exercising his or her First
Amendment rights.  See id.  Here, Ojo has alleged that Sgt
Gordon, in response to Ojo's request for a grievance form,
threatened to file a disciplinary charge against him for abusing
the grievance process.

Consideration of whether a single disciplinary charge
actually filed in response to protected speech is an adverse act
requires an assessment of whether the charge and its disposition
would be capable of deterring an inmate of ordinary firmness
from exercising his or her First Amendment rights.  See, e.g.,
Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009) ("single

retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action"); Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (inmate subjected to retaliatory disciplinary charges and subsequent punishment that would deter an inmate of ordinary firmness from exercising his First Amendment rights may be entitled to relief under section 1983).

It appears that Gordon refused to accept Ojo's grievance against Friendal, and it does not appear that any disciplinary charge was ever filed against Ojo for abusing the grievance process.  The complaint contains no information concerning the sanction the threatened disciplinary charge might carry.  On these facts, Ojo has not demonstrated that Gordon's threat to file a disciplinary charge was sufficient to deter an inmate of ordinary firmness from engaging in protected speech, and has therefore failed to satisfy the second element of a retaliation claim.  Accordingly, the retaliation claim based on Gordon's threat of disciplinary action should be dismissed.

VI.  Municipal and Supervisory Liability

The complaint names as defendants both Superintendent O'Mara and Hillsborough County.  The complaint does not include any allegations demonstrating that either Superintendent O'Mara

23

or Hillsborough County is liable for the allegation of excessive force that this court has found to state viable claims for relief.  See Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009) (supervisory liability under section 1983 lies only where "supervisor's conduct led inexorably to the constitutional violation"); Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25 (1st Cir. 2005) ("it is only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is 'the moving force' behind the constitutional violation that a municipality can be liable" under section 1983 (citation omitted)).  Ojo's complaint states neither that any conduct of O'Mara "led inexorably" to, nor that any municipal policy resulted in, the excessive force Ojo alleges.  Accordingly, any claim of supervisory or municipal liability in this case should be dismissed.

## Conclusion

For the foregoing reasons, the court finds that all of the claims and defendants in the complaint should be dismissed, with the exception of an excessive force claim against defendants Medic and Goulding.  In an order issued simultaneously with this report and recommendation, the court will direct that claim to be served on those officers.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 21, 2011

cc: Osahenrumwen Ojo, pro se

LBM:jba