**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Osahenrumwen Ojo

    v.                                    Civil No. 11-cv-210-JL

Eldin Medic and
Justin Goulding


**REPORT AND RECOMMENDATION**


Under the aegis of 42 U.S.C. § 1983, Osahenrumwen Ojo, formerly a pre-trial detainee at the Hillsborough County House of Corrections ("HCHC"), is suing HCHC correctional officers Eldin Medic and Justin Goulding.  Ojo claims that the officers used excessive force against him, in violation of the United States Constitution, while he was detained at the HCHC.  Before me for a report and recommendation is defendants' motion for summary judgment.  They argue that they are entitled to judgment as a matter of law because Ojo never properly exhausted the administrative remedies available to him at the HCHC.  Ojo objects.  The court heard oral argument on defendants' summary-judgment motion on December 12, 2012.  For the reasons that follow, I recommend that defendants' motion for summary judgment be denied.

## Summary Judgment Standard

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)). "In determining whether a genuine issue of material fact exists, [the court] construe[s] the evidence in the light most favorable to the non-moving party and make[s] all reasonable inferences in that party's favor." Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 30 (1st Cir. 2011) (citing Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that

a trialworthy issue persists." <u>Sánchez-Rodríguez v. AT&T</u>
<u>Mobility P.R., Inc.</u>, 673 F.3d 1, 9 (1st Cir. 2012) (quoting
Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)).
That is, "the party seeking to avoid summary judgment must be
able to point to specific, competent evidence to support his
claim." <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>Soto-Ocasio</u>
<u>v. Fed. Ex. Corp.</u>, 150 F.3d 14, 18 (1st Cir. 1998)) (internal
quotation marks omitted).

### Background

This action arises from events that took place on February
25, 2011, when Officers Medic and Goulding were moving Ojo from
one part of the HCHC to another.  Ojo alleges that the officers
repeatedly banged his head into a door, even though he was fully
complying with their commands.  In the interest of avoiding
cumbersome word usage, the court will refer to that alleged
application of excessive force as "the February incident," while
acknowledging the parties' dispute over whether the incident
actually took place.

In support of their motion for summary judgment, defendants
have submitted two affidavits given by the Superintendent of the
Hillsborough County Department of Corrections ("HCDOC"), David
Dionne.  In his first affidavit, Superintendent Dionne described

the three-step dispute-resolution policy set out in the HCDOC

inmate handbook:

> All grievances are initiated by submission of a
> request form . . .
>
> Per the inmate handbook, our grievance system is
> a mandatory requirement and an inmate is directed to
> use a request slip to obtain a grievance form. . . .
> [E]ach inmate filing a grievance receives a written
> reply, as well as a review (an appeal, though not
> legally required) by me or my designee.  A copy is
> also permanently kept in the inmate's [institutional]
> file.
>
> The handbook and policy require that an inmate
> must explore an informal resolution before grieving an
> issue related to his confinement.  If unsatisfied, the
> inmate is required to file a request slip, seeking a
> grievance form, with a suggested remedy, and . . .
> this is filed with a unit officer.  All such request
> forms must be answered within seven (7) working days
> of receipt; customarily, inmates receive the requested
> forms within one day.  Step three (3) of our grievance
> process provides that an inmate must grieve any issues
> relative to his confinement within 15 days of the
> event[s] and that the jail responds to these within 15
> days.

Defs.' Mot. Summ. J., Attach. 2 (doc. no. 64-2) ¶¶ 5-7.

Superintendent Dionne further testified that Ojo's inmate file

includes "many" grievance forms concerning his medical treatment

and the handling of his mail, see id. ¶ 3, but contains no

request slips or grievance forms concerning the February

incident that were filed within fifteen days of February 25, see

id.  The record does include five pieces of HCDOC paperwork

(three health services request forms, one request slip, and one

grievance form) that mention the February incident, but the

4

earliest of those documents is dated April 12, 2011, roughly

thirty days after the time for grieving the February incident

had expired.[1]

In response to Superintendent Dionne's first affidavit, Ojo

submitted his own affidavit, in which he states:

> [I] did indeed, "attempt to exhaust my administrative
> remedies" by submitting a few [request] slips to the
> HCDOC officials "[j]ust a few days after the incident
> occurred," apparently requesting for grievance in
> connection to the incident which occurred on Feb 25,
> 2011, at approximately 8:30 a.m. with regard to
> [M]edic's and [G]oulding's involvement, but the HCDOC
> officials prevented me from doing so.

Pl.'s Obj., Attach. 1 (doc. no. 67-1), at 3.  At his deposition,

Ojo elaborated.  He testified that: (1) he attempted to submit

request slips asking for forms with which to grieve the February

incident on March 5, 6, 7, 8, and 11, see Defs.' Reply, Attach.

1 (doc. no. 71-1), at 5, 10;[2] and (2) each request slip

identified the February incident as the matter Ojo wished to

grieve, see id. at 3-4.  Ojo said that he placed his request

---

[1] Moreover, none of those forms or slips may fairly be
construed as complaints about the use of excessive force.  While
they all mention the alleged head-banging, Ojo's stated purpose
in filing them was to obtain medical care for headaches that
allegedly resulted from the February incident, not to protest
the amount of force that was used against him.

[2] To be fair, Ojo's deposition is not perfectly clear with
respect to the dates on which he attempted to submit those
request slips, see doc. no. 71-1, at 5, 7, but, when ruling on
defendants' motion for summary judgment, the court must construe
the evidence in the light most favorable to Ojo, see Markel, 674
F.3d at 30.

slips on the door of his cell for pick-up by HCHC officers, <u>see</u>
<u>id.</u> at 2, 16, and that he saw correctional officers collect each
of them, <u>see id.</u> at 11, 17, 22.  He also identified the time of
day at which he posted those slips, <u>see id.</u> at 8, and the unit
on which he was being housed when he attempted to submit them,
<u>see id.</u> at 2.  But, Ojo also testified that he never received
the grievance form he requested, or received any other response
to his five request slips.  <u>See id.</u> at 2, 7, 12.

In his second affidavit, which was attached to an addendum
to defendants' reply, Superintendent Dionne provided the
following relevant testimony:

> Officers may be subject to discipline for refusing or
> subverting an inmate's use of the request and/or
> grievance process . . .
>
> I have reviewed [Ojo]'s inmate file and note that
> he filed 30 request forms during the custody at issue,
> with 8 of these being filed in March (the five weeks
> following this alleged incident).  Further, in entry
> of his numerous requests and grievances, he never once
> claimed that staff prevented his access to and/or use
> of the grievance process (this was raised only in this
> litigation).
>
> If [Ojo] had encountered any difficulty in
> submitting requests to obtain grievances due to
> certain unnamed officers, there are three [3] shifts
> on duty at the jail on any given day and the same
> officers are not assigned to a particular housing unit
> for a week on end . . . .  Thus, if [Ojo] had
> difficulty with certain officers providing him
> requests, he would have had access to other staff
> members . . . to obtain and submit his requests for
> grievances . . . .  Additionally, supervisory staff
> . . . are regularly on every housing unit in the jail
> and it is not uncommon for inmates to request to see

6

and thereby voice complaints or concerns directly to
these supervisors . . . .  Mr. Ojo never testified
that he utilized or even attempted this avenue and it
does not appear he ever wrote (via his counsel or
personally) to the administration about his current
complaint of being unable to file grievances . . . .

Addendum, Attach. 1 (doc. no. 77-1) ¶¶ 3-5.

## Discussion

Based on the foregoing, defendants argue that they are
entitled to summary judgment because Ojo failed to exhaust the
administrative remedies available to him at the HCHC.  Ojo
contends that he is excused from the exhaustion requirement
because his attempts to utilize the HCDOC grievance procedure
were thwarted by jail officials.  At this point, however, the
only question before the court is whether defendants are
entitled to summary judgment based on Ojo's failure to exhaust.
They are not.

According to the Prison Litigation Reform Act ("PLRA"),
"[n]o action shall be brought with respect to prison conditions
under section 1983 of this title . . . by a prisoner confined in
any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted."  42
U.S.C. § 1997e(a).  The "exhaustion requirement applies to
allegations of physical violence by prison guards."  Cruz
Berríos v. Gonzáles-Roserio, 630 F.3d 7, 11 (1st Cir. 2010)
(citing Porter v. Nussle, 534 U.S. 516, 532 (2002)).  Claims

that have not been exhausted are subject to dismissal.  See
Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir.
2002).

Moreover, "the PLRA exhaustion requirement requires proper
exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Proper
exhaustion "demands compliance with [a penal institution]'s
deadlines and other critical procedural rules."  Id. at 90.  To
meet the requirement of proper exhaustion, "a prisoner must file
complaints and appeals in the place, and at the time, the
prison's administrative rules require."  Acosta v. U.S. Marshals
Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v.
McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"[F]ailure to exhaust is an affirmative defense under the
PLRA."  Jones v. Bock, 549 U.S. 199, 216 (2007).  As such, it
"must be raised and proved by the defense."  Cruz Berríos, 630
F.3d at 11 (citing Jones, 549 U.S. at 216).  That said, "the
availability of administrative remedies to a prisoner is a
question of law."  Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir.
2003) (quoting Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002)).
Similarly, the final determination of "[w]hether an inmate has
[exhausted his administrative remedies] presents a question of
law, although the answer may depend on disputed factual issues."
Beltran v. O'Mara, 405 F. Supp. 2d 140, 149 (D.N.H. 2005)

(citing <u>Snider v. Melindez</u>, 199 F.3d 108, 113 (2d Cir. 1999);

<u>Mitchell</u>, 318 F.3d at 529).

Here, Ojo concedes that he never submitted a grievance form

to complain about the February incident.  But, in response to

defendants' invocation of the exhaustion requirement, Ojo argues

that

> he indeed, . . . made numerous attempts to use the
> grievance procedure to try to address the incident of
> Feb 25, 2011.  The plaintiff submitted a few [request]
> slips to the [H]illsborough County [D]epartment of
> Corrections officials in unit 2B.  [B]ut the officials
> intentionally ignored the plaintiff's requests for
> grievance.

Pl.'s Obj. (doc. no. 67), at 1.  He also mentions "the

[H]illsborough County [D]epartment of [C]orrections officials[']]

refusal to respond to [his] requests for a grievance," <u>id.</u> at 2,

and argues that their refusal "prevented [him] from filing a

grievance in connection with [his] head injury," <u>id.</u> at 3.

Those arguments are supported by Ojo's deposition testimony

that: (1) at least five times during the fifteen-day period when

he was obligated to begin the process of grieving the February

incident, HCHC correctional officers took in hand request slips

he had posted on his cell door in an effort to obtain the

necessary grievance form; and (2) he received no response to any

of those five request slips.  Ojo's deposition testimony is

enough to avoid summary judgment.

There are at least three different theories under which a prisoner may be excused from the PLRA exhaustion requirement. As the Court of Appeals for the Second Circuit has explained:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner.  Abney v. McGinnis, 380 F.3d 663 [2d Cir. 2004)].  The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, Johnson v. Testman, 380 F.3d 691 [(2d Cir. 2004)], or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, Ziemba [v. Wezner], 366 F.3d [161,] 163 [(2d Cir 2004)].

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (parallel citation omitted).

The Hemphill opinion characterizes the first theory, unavailability, as having to do with the responsiveness of prison officials to properly filed submissions from prisoners:

> We note, however, that if Hemphill wrote in a timely fashion to the Superintendent pursuant to a possibly valid interpretation of DOCS grievance procedures, there might be a question as to the availability of remedies, since Hemphill received no response to his letter, and there is no indication in the record that his grievance was ever recorded, as required by DOCS regulations.  Cf. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("agree[ing with other circuits] that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (stating that prison's failure timely to respond renders administrative remedies unavailable); Foulk v.

> Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (holding
> that defendants failed to prove non-exhaustion where
> they presented no evidence to refute plaintiff's
> contention that he could not pursue grievance further
> after warden did not respond to his grievance);
> Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)
> (holding that "available administrative remedies are
> exhausted when the time limits for the prison's
> response set forth in the prison Grievance Procedures
> have expired").

380 F.3d at 687.  Other courts have taken a slightly different

tack, characterizing unavailability in a way that echoes the

estoppel theory advanced in Hemphill.  For example, in Little v.

Jones, the Tenth Circuit explained that "[w]here prison

officials prevent, thwart, or hinder a prisoner's efforts to

avail himself of an administrative remedy, they render that

remedy 'unavailable' and a court will excuse the prisoner for

failure to exhaust."  607 F.3d 1245, 1250 (10th Cir. 2010)

(citing Lyon v. Vande Krol, 305 F.3d 806, 808 (8th Cir. 2002)

(en banc)).  Similar principles prevail in the Seventh Circuit,

where the court of appeals has said:

> [W]hen [federal] prison officials prevent inmates from
> using the administrative process detailed in the Code
> of Federal Regulations, the process that exists on
> paper becomes unavailable in reality.  Thus, as we
> held in Dale [v. Lappin], when prison officials fail
> to provide inmates with the forms necessary to file an
> administrative grievance, administrative remedies are
> not "available."  376 F.3d [652,] 656 [(7th Cir.
> 2004)].  The Third Circuit reached a similar
> conclusion in Brown v. Croak, 312 F.3d 109, 111-12 (3d
> Cir. 2002), which held that administrative remedies
> were unavailable where the prison officials
> erroneously told the prisoner that he must wait until
> the investigation was complete before filing a

11

grievance.  See also Miller v. Norris, 247 F.3d 736,
740 (8th Cir. 2001).  Most recently, we observed,
"Prison officials may not take unfair advantage of the
exhaustion requirement, [ ] and a remedy becomes
'unavailable' if prison employees do not respond to a
properly filed grievance or otherwise use affirmative
misconduct to prevent a prisoner from exhausting."
Dole v. Chandler, 438 F.3d [804,] 809 [(7th Cir.
2006)].

Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006); see also

Mitchell, 318 F.3d at 529 (citing Miller, 247 F.3d at 740, for

the proposition that "a remedy that prison officials prevent a

prisoner from utilizing is not an available remedy under §

1997e(a)") (brackets and internal quotation marks omitted).

　　　　Here, Ojo has not just alleged, but has stated in sworn

testimony, that during the fifteen-day window for grieving the

February incident, he posted, and HCHC correctional officers

collected, five request slips in which he asked for a form he

could use to grieve the February incident.  In other words, in

response to defendants' assertion of the affirmative defense of

lack of exhaustion, Ojo has produced evidence that he was

prevented from filing a grievance either by correctional

officers who collected his request slips but discarded them

before properly transmitting them, or by correctional officials

who received those slips but failed to provide Ojo the grievance

form he requested.  Either way, Ojo has produced evidence that,

if credited, could excuse his failure to exhaust his

administrative remedies.

Defendants respond to that evidence by arguing that: (1)
Ojo's affidavit provides insufficient detail regarding the
manner in which he was hindered in his attempt to grieve the
February incident; (2) an inmate of ordinary firmness would not
have been dissuaded from attempting to grieve that incident
under the circumstances of this case; and (3) the fact that
Ojo's inmate file includes approximately thirty request slips on
topics other than the February incident "contradicts his claims
of being unable to access grievance documentation," Defs.' Reply
(doc. no. 71), at 4.  None of those attempts to refute Ojo's
evidence is enough to entitle defendants to summary judgment.

Turning to defendants' first argument, which is based upon
a purported lack of detail in Ojo's affidavit, the court
appreciates that "a conglomeration of conclusory allegations,
improbable inferences, and unsupported speculation is
insufficient to discharge the nonmovant's burden" when opposing
a summary-judgment motion, Sánchez-Rodríguez, 673 F.3d at 9
(quoting DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir.
2005)).  But, Ojo's objection to summary judgment is supported
by more than that.  Defendants argue that Ojo's affidavit
"testimony offers neither details as to the manner in which he
was prevented from filing a grievance, nor identifies any
official who systematically or specifically prevented his
access."  Defs.' Reply (doc. no. 71), at 3.  Defendants,

13

however, appear to ignore Ojo's deposition, which is evidence the court may consider even if Ojo does not cite it.  See Fed. R. Civ. P. 56(c)(3).  Ojo's deposition testimony identifies five specific dates on which correctional officers collected request slips from the door of his cell, the times of day at which he posted those slips, and the unit in which he was being housed when he posted them.

Thus, this is not a case in which there is "no record evidence indicating that the defendants prevented [an inmate] from using the administrative remedy provided in [an] [i]nmate [h]andbook."  Oliver v. Moore, 145 F. App'x 731, 735 (3d Cir. 2005) (affirming grant of summary judgment to prison officials on inmate's § 1983 claim due to inmate's failure to exhaust). Nor is this a case in which an inmate has attempted to resist a failure-to-exhaust defense by presenting only a brief assertion without "any details as to the nature, content, or timing" of his jailor's attempts to block his use of the grievance process. Martin v. Pa. Dep't of Corr., 395 F. App'x 885, 887 (3d Cir. 2010) (affirming district court's dismissal of prisoner's § 1983 claim).  Rather, the summary judgment record includes sufficient evidence to create a triable factual dispute as to whether HCHC correctional officers prevented Ojo from using the HCDOC grievance procedure, thus making that procedure unavailable to him, at least for the purpose of grieving the February incident.

14

In support of their second argument, defendants point to Ojo's deposition testimony that he eventually gave up trying to grieve the February incident, see Def.'s Reply, Attach. 1 (doc. no. 71-1), at 7, and they rely on the principle that "[a] generalized, unspecific, and subjective belief or fear of retaliation on the part of an inmate cannot give rise to estoppel excusing exhaustion," Thompson v. Gordon, No. 09-cv-82-SM, 2010 WL 2629416, at *2 (D.N.H. June 28, 2010).  In Hemphill, on which Judge McAuliffe relied in Thompson, the Second Circuit explained that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available."  380 F.3d at 688 (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).

The court begins by noting that Thompson involved an inmate who claimed that correctional officers were estopped from asserting lack of exhaustion "because they threatened him with further assaults if he complained about the beatings they had already inflicted on him."  2010 WL 2629416, at *1.  Here, by contrast, Ojo does not contend that he was threatened with retaliation.  Instead, he asserts that he attempted to use the grievance process but was prevented from doing so by wrongdoing or inaction by HCDOC personnel.

But, even if the legal principle described in <u>Thompson</u> is applicable to the facts of this case, Ojo has offered more than generalized statements about his belief that the HCDOC grievance procedure was unavailable to him.  He testified that he managed to get no fewer than five request slips into the hands of HCHC correctional officers, yet HCDOC officials responded to none of them.[3]  He did not testify that he eschewed the grievance procedure because he believed it would be fruitless; he testified that he tried, at least five times, to use the process prescribed by the inmate handbook.  He testified about the dates and times at which he posted request slips on the door of his cell.  And, he testified that he spoke to one officer about the lack of response to his request slips, and was told to wait.[4]  Defs.' Reply, Attach. 1 (doc. no. 71-1), at 12.  In sum, in the face of Ojo's deposition testimony, defendants' invocation of

---

[3] Ojo's testimony on this point may or may not prove to be credible, but that is a question for another day.  <u>See</u> <u>Noonan</u>, 556 F.3d at 25.

[4] That testimony tends to undercut defendants' unsupported characterization of the HCDOC's failure to respond to Ojo's request slips as "something [Ojo] ultimately chose to forego and not bring to the attention of the supervisory officers he encountered daily on his housing unit," Defs.' Reply (doc. no. 71), at 9-10.  At the very least, it is not undisputed that Ojo failed to follow up on the lack of response to his request slips.  Moreover, erroneous or misleading instructions from a correctional officer that inhibit an inmate from properly pursuing an administrative remedy have the effect of making that remedy unavailable.  <u>See</u> <u>Brown</u>, 312 F.3d at 112-13.

the rule stated in Thompson is insufficient to entitle them to judgment as a matter of law that the administrative remedies that Ojo failed to exhaust were available to him.

In their reply, defendants make much of their undisputed evidence that request slips are widely available in the HCHC, but Ojo does not claim that he was denied access to request slips; he contends that the five slips he posted on his cell door were collected by correctional officers but went unanswered.  Defendants have also produced evidence concerning Ojo's access to staff members other than those who collected the request slips he posted on his door.  They argue that "even assuming arguendo (as plaintiff posits) that particular officers inhibit[ed] [his] access [to grievance forms], such forms would [have been] available from officers on other shifts, on other days or from the supervisors who are regularly on all housing units."  Def.'s Reply (doc. no. 71, at 3).  Of course, the determinative question is not whether there were other ways in which Ojo could have obtained grievance forms; the question is whether a person of ordinary firmness in Ojo's situation, i.e., a person who had submitted several unanswered request slips, would still have deemed the grievance process available to him or her.  Thus, the court construes defendants' reply as making the argument that because there were other correctional officers to whom Ojo could have submitted request slips, a person of

ordinary firmness in his position would have understood that the grievance process was available to him, notwithstanding his lack of success at submitting request slips by posting them on his cell door.

There are several problems with that argument.  First, it presupposes that Ojo's request slips went unanswered because they never made it to the appropriate decisionmaker, not because a decisionmaker who had received them failed to respond.  It also presupposes that Ojo should have ascertained that the lack of response was due to a failure of delivery, rather than inattention from the decisionmakers – a problem that would not have been solved by Ojo's seeking out and finding a more effective courier for his request slips.  Moreover, defendants' argument poses the following two-part question.  At what point was Ojo obligated to: (1) conclude that the correctional officers who collected the request slips from his cell door were not delivering them; and (2) find a way around their dereliction of duty?  Finally, it seems somehow unfair to allow defendants to reap the benefit of Ojo's failure to deduce, sooner than he did, that some HCHC correctional officers were not doing what he had every right to expect them to do, i.e., deliver his request slips.  In any event, defendants' argument that the grievance process was available to Ojo because he could have submitted his request slips to different correctional officers may have merit,

18

but it is not one the court can accept, as a matter of law, on summary judgment.[5]

Defendants' third argument rests on these undisputed facts: (1) in the five weeks after the February incident, Ojo successfully submitted eight request slips; and (2) during his detention at the HCHC, he fully grieved issues arising from conditions of his confinement other than the February incident. In defendants' view, Ojo's ability to submit request slips based on, and to fully grieve, various other issues undermines his claim that he was prevented from grieving the February incident.

To be sure, there are cases in which courts have declined to excuse a prisoner's failure to exhaust administrative remedies with respect to some complaints about conditions of confinement when the record shows complete exhaustion with respect to other complaints. But, those cases tend to involve plaintiffs claiming that: (1) prison officials had retaliated against them for taking advantage of administrative remedies,

---

[5] In his second affidavit, Superintendent Dionne seems to challenge the veracity of Ojo's testimony that he posted request slips on his door that went unanswered by observing that Ojo's inmate file contains no request slips asking for forms with which to grieve the jail's failure to transmit or respond to the request slips he had previously submitted in an effort to obtain forms with which to grieve the February incident. For his part, Ojo does not claim that he ever tried to use a request slip to begin the process of grieving the HCDOC's failure to respond to his previous request slips, and any suggestion that he should have done so would seem to be based upon some standard other than "ordinary firmness."

see, e.g., Guarneri v. West, 782 F. Supp. 2d 51, 60 (W.D.N.Y. 2011); (2) prison officials had threatened them with retaliation, in an effort to discourage them from pursuing such remedies, see, e.g., Harrison v. Goord, No. 07 Civ. 1806(HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (declining to excuse prisoner's failure exhaust where prisoner claimed he was threatened but record "reflect[ed] that he continued to file grievance after grievance during the same period of time when he was allegedly being threatened and harassed"); or (3) they had been suffering from disabilities that prevented them from pursuing their administrative remedies, see, e.g., Barrick v. Prison Health Sys./Med., 335 F. App'x 153, 155 (3d Cir. 2009). Here, Ojo does not claim that he was prevented from exhausting his administrative remedies by retaliatory acts, threats of retaliation, or some disability; he claims that correctional officers destroyed or ignored his request slips.  In addition, he testified that his request slips indicated the subject matter he wanted to grieve, which would have made it easy for correctional officers to destroy or ignore request slips pertaining to the February incident while properly handling request slips directed toward other issues.  In other words, there is nothing about the fact that Ojo fully grieved some issues that discredits, as a matter of law, his claim that he was prevented from grieving the February incident.

The bottom line is that defendants bear the burden of proof on their affirmative defense of lack of exhaustion.  See Jones, 549 U.S. at 216; Cruz Berríos, 630 F.3d at 11.  It is undisputed that Ojo did not properly exhaust his administrative remedies with regard to the February incident.  But, Ojo has produced evidence that, if accepted as true, could prevent defendants from proving that the HCDOC grievance procedure was available to him for complaining about the February incident, which would excuse him from the exhaustion requirement.  For that reason, defendants are not entitled to summary judgment based upon Ojo's failure to exhaust his administrative remedies.  Finally, while defendants are not entitled to summary judgment, there is nothing in this report and recommendation that would preclude defendants from raising, at trial, the affirmative defense of failure to exhaust.

## Conclusion

For the reasons detailed above, I recommend that defendants' motion for summary judgment, document no. 64, be denied.  Because the reasoning underlying that recommendation applies with equal force to the motion to dismiss that was converted to a motion for summary judgment, I further recommend denial of document no. 55.

21

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 17, 2012

cc:  Osahenrumwen Ojo, pro se
     John A. Curran, Esq.